UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Leandre Martell,<br><br>　　　　　Plaintiff<br>　　v.<br><br>Las Vegas Metropolitan Police Department, et al.,<br><br>　　　　　Defendants | Case No. 2:21-cv-01733-JAD-DJA<br><br>**Order Screening<br>First Amended Complaint**<br><br>[ECF No. 6] |

　　　Plaintiff Leandre Martell brings this civil-rights action under 42 U.S.C. § 1983, claiming that his constitutional rights were violated and that he experienced medical malpractice during his time at the Clark County Detention Center (CCDC).  Martell applies to proceed *in forma pauperis*.[1]  I grant that application and screen his first amended complaint under 28 U.S.C. § 1915A.  Having done so, I find that Martell has pled a colorable First Amendment retaliation claim, but the other claims are lacking.  So I dismiss the state-law medical malpractice claim without prejudice but without leave to amend, and I dismiss the Fourteenth Amendment verbal harassment claim with prejudice.  I dismiss the remaining claims with leave to amend by May 13, 2022.

---

[1] ECF No. 5.

**Background**

**A.    Plaintiff's factual allegations**[2]

In June 2021, Martell was a pretrial detainee at CCDC.[3] On June 10, 2021, Officer Chandler "verbally assaulted and harassed" Martell in front of sixty or seventy inmates, calling him "slandering names" and using "derogatory terms of unhuman-like references."[4] To prevent his fellow officers from overhearing the harassment, Chandler turned off his walkie-talkie.[5] He then "invaded [Martell's] personal space without his mask" and told Martell to "jump!"[6]

At some point after this incident, Chandler falsified official documents in order to accuse Martell of creating a "major dorm disturbance."[7] As a result, Martell suffered a loss of programming and harsher living conditions.[8] Since the altercation, Martell has required mental-health evaluations and treatment.[9]

Seeking redress for Chandler's misconduct, Martell contacted "Internal Affairs" and the "Citizen's Review Board," both of which opened investigations into Chandler.[10] But Chandler continued to "harass" Martell and began "isolat[ing]" him from other inmates.[11] Chandler also "vigorously interrogate[d]" him, made "threatening or bribing gestures," and labelled him a

---

[2] This is merely a summary of facts alleged in the first amended complaint and should not be construed as findings of fact.
[3] ECF No. 6 at 4.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* at 4–5.
[11] *Id.* at 5.

"snitch."[12] To "ensure [his] safety," Martell accepted a plea deal for "prison time" when he should have received probation.[13]

Martell also experienced mistreatment at the hands of Officer Khabro.[14] On June 17, 2021, Khabro falsely accused Martell of creating a major dorm disturbance and threatening to "kick [Khabro's] ass."[15] As a result of these false charges, Martell was placed in solitary confinement.[16] Martell was taken to a hallway and placed in handcuffs and waist restraints that were too tight.[17] Martell was then forced to sleep for six hours on a wooden bench in a single-man cell.[18] During this time, Martell remained restrained, which prevented him from using the bathroom.[19] Martell complained about this incident to Internal Affairs and the Citizen's Review Board.[20]

The tight handcuffs caused a "significant wrist injury."[21] Martell sought medical treatment for two months before he was able to see a doctor.[22] During those two months, he repeatedly requested an examination of his right wrist, explaining that he could not "apply pressure," lift heavy items, or perform a push up without falling on his face.[23] These requests

---

[12] *Id.*
[13] *Id.*
[14] *Id.* at 6.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at 8.

were ignored or "thrown in the trash."[24] When Martell finally saw a doctor, an x-ray was taken and he received medication.[25] The doctor told Martell that "it shouldn't have taken so long to be seen," and that because his wrist had healed "incorrectly," he would not be able to "properly" use his wrist or perform "day to day activities" for at least a year.[26]

Martell was charged for the visit in violation of Nevada law.[27] For two months, he sought a refund.[28] The doctor told Martell that he had never been charged, so Martell was charged again.[29] "Medical" then told Martell that they did not have any of his kites and that his account did not "show any charges."[30]

**B.     Plaintiff's causes of action**

Based on these events, Martell sues the Las Vegas Metropolitan Police Department (LVMPD), E. Khabro, D. Chandler, and a John Doe Contracted Medical Provider.[31] Martell asserts claims for Eighth Amendment cruel and unusual punishment, "medical indifference," and malpractice.[32] Because Martell was a pretrial detainee at the time of the events described in the first amended complaint, the Fourteenth Amendment—not the Eighth Amendment—governs his right to be free from punishment.[33] Thus, I liberally construe the first amended complaint as

---

[24] *Id.*
[25] *Id.* at 7–8.
[26] *Id.* at 7.
[27] *Id.* at 8.
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.* at 1–2.
[32] *Id.* at 4–9.
[33] *See Vazquez v. Cty. of Kern*, 949 F.3d 1153, 1163-64 (9th Cir. 2020).

bringing (1) Fourteenth Amendment claims based on verbal harassment, the denial of procedural due process, excessive force, conditions of confinement, and inadequate medical care; (2) a First Amendment retaliation claim; and (3) a state-law claim for medical malpractice.

## Discussion

**A.    Screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[34] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.[35] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[36]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[37] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[38] Allegations of a *pro se* complainant are held to less

---

[34] *See* 28 U.S.C. § 1915A(a).
[35] *See* 28 U.S.C. § 1915A(b)(1)(2).
[36] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).
[37] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).
[38] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

stringent standards than formal pleadings drafted by lawyers,[39] but a plaintiff must provide more than mere labels and conclusions.[40] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[41] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[42]

**B.     Analysis of claims**

   *1.     Martell does not state a colorable verbal-harassment claim.*

Verbal harassment or abuse is generally "not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983."[43] To state a Fourteenth Amendment claim based on a jail official's verbal harassment, a plaintiff must allege that the offending comments were "unusually gross even for a prison setting and were calculated to and did cause him psychological damage."[44]

Martell fails to state a colorable claim for verbal harassment. He alleges that Chandler "verbally assaulted and harassed" him in front of sixty or seventy inmates.[45] Martell is vague about the form this harassment took, alleging only that Chandler called him "slandering names"

---

[39] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[40] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[41] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[42] *Id.*

[43] *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *see also Perez v. Azusa Police Dep't*, No. 18-cv-08535, 2021 WL 1587935, at *10 (C.D. Cal. Jan. 25, 2021) (applying *Oltarzewski* to pretrial detainee), *adopted by* 2021 WL 1583893 (C.D. Cal. Mar. 9, 2021).

[44] *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996); *see also Cooper v. Valdovinos*, No. 17-cv-2463, 2019 WL 7833904, at *3 (C.D. Cal. Dec. 12, 2019) (applying *Keenan* to pretrial detainee), *adopted by* 2020 WL 528004 (C.D. Cal. Jan. 31, 2020).

[45] ECF No. 6 at 4.

and used "derogatory terms of unhuman-like references."[46]  Chandler also "invaded [Martell's] personal space without his mask" and told Martell to "jump!"[47]  These allegations describe inappropriate and unprofessional conduct, but they do not support a reasonable inference that Chandler's comments were "unusually gross even for a prison setting and were calculated to and did cause [Martell] psychological damage."[48]  So I dismiss this claim with prejudice because amendment would be futile.

### 2. *Martell does not state a colorable procedural-due-process claim*

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."[49]  Pretrial detainees retain "a protected liberty interest in remaining free from any type of punishment, including disciplinary segregation."[50]  They may not be deprived of a liberty interest through the disciplinary process unless they receive the procedural protections set forth in the U.S. Supreme Court's decision in *Wolff v. McDonnell*.[51]  Those protections consist of (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the detainee, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security;

---

[46] *Id.*

[47] *Id.*

[48] *Keenan*, 83 F.3d at 1092.

[49] *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

[50] *Briggs v. Gallatin Cty.*, No. 18-cv-10, 2020 WL 2557740, at *5 (D. Mont. May 20, 2020) (citing *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996)).

[51] *Mitchell*, 75 F.3d at 523; *Wolff v. McDonnell*, 418 U.S. 539 (1974).

and (3) legal assistance if the charges are complex or the inmate is illiterate.[52]  Inmates "have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under § 1983."[53] "As long as [an inmate] is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge generally fail to state a claim under [§] 1983."[54]

Martell alleges that both Chandler and Khabro falsely accused him of creating a disturbance in the dorm.  As a result of the false charges, Martell was placed in solitary confinement and lost certain privileges.  These allegations are insufficient to state a colorable procedural-due-process claim because Martell does not allege that he failed to receive the required procedural protections during any of his disciplinary proceedings.  Because I am not yet convinced that Martell cannot allege facts to support this claim, I dismiss it without prejudice and with leave to amend.

### 3. *Martell does not state a colorable excessive-force claim.*

In *Kingsley v. Hendrickson*, the Supreme Court held that a pretrial detainee states a claim for excessive force under the Fourteenth Amendment if (1) the defendant's use of force was purposeful and knowing, and (2) the force purposely or knowingly used against the pretrial detainee was objectively unreasonable.[55]  In determining whether the force used was objectively unreasonable, courts may consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper

---

[52] *See Wolff*, 418 U.S. at 563–70.

[53] *Johnson v. Felker*, No. 12-cv-02719, 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013); *see also Johnson v. Berndt*, No. 20-cv-00150, 2020 WL 7408720, at *4 (D. Nev. Dec. 17, 2020) ("Merely making false statements or bringing false charges is not a due-process violation.").

[54] *Johnson*, 2013 WL 6243280, at *6.

[55] *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).

8

or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."[56] "In the Ninth Circuit, tight handcuffing can constitute excessive force," especially where "the handcuffs caused [a pretrial detainee] unnecessary pain."[57]

Martell fails to state a colorable excessive-force claim. He alleges that, after being found guilty of false charges, he was taken to a hallway and placed in handcuffs and waist restraints that were too tight. He remained restrained for six hours, and the tight handcuffs severely injured his wrist. Although these allegations could conceivably support an excessive-force claim, they are insufficient as currently pled because Martell does not identify the individuals (defendants or otherwise) who placed him in excessively tight restraints or identify any person who refused to remove the restraints. A defendant is liable under § 1983 "only upon a showing of personal participation" in the alleged constitutional violation.[58] Because Martell does not tie the allegations about cuffing to any particular person, he does not state a colorable claim. So I dismiss this claim without prejudice and with leave to amend.

### 4. *Martell does not state a colorable conditions-of-confinement claim.*

A pretrial detainee's claims challenging unconstitutional conditions of confinement fall under the Fourteenth Amendment's Due Process Clause.[59] Courts evaluate Fourteenth Amendment conditions of confinement claims under the objective deliberate-indifference

---

[56] *Id.* at 397.

[57] *Gradford v. Stanislaus Pub. Safety Ctr.*, No. 17-cv-01248, 2019 WL 2420104, at *6 (E.D. Cal. June 10, 2019) (collecting cases), *adopted by* 2019 WL 3860135 (E.D. Cal. Aug. 16, 2019).

[58] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[59] *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124 n.2 (9th Cir. 2018).

9

standard.[60]  To establish unconstitutional conditions of confinement, a plaintiff must prove that (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) the conditions were not necessary to serve the penological interest related to the confinement of the pretrial detainee or the conditions were excessive as to the particular penological purpose; (3) the conditions were objectively dehumanizing, uncivil, or unsanitary; and (4) the defendant did not take reasonable steps to alleviate or remedy the conditions.[61]

Martell fails to state a colorable conditions-of-confinement claim.  Based on the allegations, Martell was forced to sleep for six hours on a wooden bench in a single-man cell. And because he remained in handcuffs and waist restraints, Martell was unable to use the bathroom during this time.  Martell's allegation that he slept for six hours on a bench is insufficient to establish a constitutional violation,[62] and he can't premise a conditions-of-confinement claim on the allegation that he could not use a restroom for six hours.[63]  Finally, Martell's claim fails for the additional reason that he does not identify the individuals responsible

---

[60] *See id.* (recognizing that "[t]he Second Circuit also recently extended the objective deliberate indifference standard to all conditions of confinement claims brought under the due process clause of the Fourteenth Amendment").

[61] *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1068-71 (9th Cir. 2016); *Gordon*, 888 F.3d at 1125.

[62] *See Trammell v. McDonnell*, No. 17-cv-5255, 2017 WL 11632456, at *6 (C.D. Cal. Oct. 25, 2017) (holding that pretrial detainee's "allegations of . . . 'hours' sleeping on hard surfaces fail to state a claim because they allege no more than de minimis harm").

[63] *See Garcia v. Garcia*, No. 17-cv-01313, 2018 WL 11257395, at *5 (E.D. Cal. May 31, 2018) (holding that pretrial detainee's "suggestion that he was in the holding cell for approximately 8 1/2 hours without restroom access or food is insufficient to state a claim").

for the conditions in his cell.[64] For these reasons, I dismiss this claim without prejudice and with leave to amend.

### 5. *Martell does not state a colorable claim for inadequate medical care.*

Pretrial detainees may raise inadequate-medical-care claims under the Fourteenth Amendment's Due Process Clause.[65] Courts evaluate these claims under an objective deliberate indifference standard.[66] The elements of a pretrial detainee's Fourteenth Amendment inadequate medical care claim are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.[67]

The third element requires the defendant's conduct to be "objectively unreasonable," a test that turns on the facts and circumstances of each particular case.[68] A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard."[69]

Martell alleges that, after the incident in which he was placed in excessively tight restraints, he repeatedly sought treatment for injuries to his right wrist. Those injuries were serious enough that Martell could not apply pressure to his wrist, lift heavy items, or perform a

---

[64] *See Taylor*, 880 F.2d at 1045 (holding that a defendant is liable under § 1983 "only upon a showing of personal participation" in the alleged constitutional violation).
[65] *Gordon*, 888 F.3d at 1124.
[66] *Id.* at 1125.
[67] *Id.*
[68] *Id.*
[69] *Id.*

push up without falling on his face. Martell's requests were ignored or thrown away. When Martell finally saw a doctor two months later, he learned that, because his wrist had healed incorrectly, he would not be able to perform everyday activities for at least a year. These allegations could conceivably form the basis of an inadequate medical care claim. The problem, again, is that Martell does not identify the individuals responsible for the two-month delay in medical treatment.[70] Without allegations linking the delay to particular individuals, Martell cannot state a colorable claim for inadequate medical care. I thus dismiss this claim without prejudice and with leave to amend.[71]

### 6.   *Martell states a colorable First Amendment retaliation claim.*

Inmates have a First Amendment right to file grievances and to pursue civil rights litigation in the courts.[72] "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."[73] To state a First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action

---

[70] *See Taylor*, 880 F.2d at 1045 (holding that a defendant is liable under § 1983 "only upon a showing of personal participation" in the alleged constitutional violation).

[71] To the extent that Martell seeks to assert a claim based on being charged a fee for medical care, any such claim would fail. "Charging inmates for medical care does not violate the Constitution where medical care is not denied." *Edmundson v. Bowen*, No. 13-cv-00032, 2014 WL 4104132, at *4 (D. Mont. Aug. 18, 2014) (citing *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985)), *aff'd sub nom. Edmundson v. Flathead Cty. Sheriff Dep't*, 654 F. App'x 264 (9th Cir. 2016). Martell does not allege that he was denied treatment because of his inability to pay the fee.

[72] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

[73] *Id.*

against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[74] Total chilling is not required to state a retaliation claim; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.[75]

Martell states a colorable First Amendment retaliation claim. He alleges that he engaged in protected activity by complaining to Internal Affairs and the Citizen's Review Board about Chandler's alleged misconduct. In response, Chandler harassed and threatened him, including by labelling him a "snitch."[76] As a result, Martell feared for his safety, ultimately accepting a plea deal that resulted in "prison time" in order to escape from Chandler.[77] These allegations are sufficient to plead that, in retaliation for Martell's protected activity, Chandler exposed Martell to potential harm from other inmates by labelling him a snitch[78]--conduct that might deter an ordinary inmate from pursuing First Amendment activities in the future.[79] So Martell states a colorable First Amendment retaliation claim, and it will proceed against Chandler.

---

[74] *Id.* at 567–68.

[75] *Id.* at 568–69.

[76] ECF No. 6 at 5.

[77] *Id.*

[78] *Florence v. Nangalama*, No. 11-cv-3119, 2014 WL 3689362, at *11 (E.D. Cal. July 22, 2014) ("[U]se of the term 'snitch' in the prison setting is inflammatory and may pose a danger to an inmate's safety, distinguishing it from vulgarity or other offensive terms that constitute mere harassment."), *adopted by* 2014 WL 4098150 (E.D. Cal. Aug. 18, 2014).

[79] *See Hammler v. Franklin*, No. 18-cv-5525, 2019 WL 7842424, at *6 (C.D. Cal. Sept. 24, 2019) ("Calling a prisoner a 'snitch' in front of other prisoners in retaliation for filing grievances may be sufficient to support a retaliation claim." (citing *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989))), *adopted by* 2019 WL 7856764 (C.D. Cal. Dec. 19, 2019).

### 7. *Martell does not state a colorable claim for medical malpractice.*

Martell asserts a medical-malpractice claim. For such claims, Nevada Revised Statute § 41A.071 requires that:

> [T[he district court shall dismiss the action, without prejudice, if the action is filed without an affidavit that . . . [s]upports the allegations contained in the action; . . . [i]s submitted by a medical expert who practices or has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged professional negligence; . . . [i]dentifies by name, or describes by conduct, each provider of health care who is alleged to be negligent; and . . . [s]ets forth factually a specific act or acts of alleged negligence separately as to each defendant in simple, concise and direct terms.[80]

A complaint that does not contain this affidavit "is void ab initio, meaning it is of no force and effect."[81] Martell did not file the required affidavit,[82] so I dismiss the medical-malpractice claim without prejudice but without leave to amend.

### 8. *Martell does not state a colorable claim against the LVMPD.*

Finally, Martell has failed to plead a colorable claim against the LVMPD. "The LVMPD is a political subdivision of the state and may sue or be sued in its own name."[83] "To state a colorable claim against the LVMPD, a plaintiff must allege a theory of municipal liability."[84] A municipality may be found liable under 42 U.S.C. § 1983 only if the municipality itself causes

---

[80] Nev. Rev. Stat. § 41A.071(1)–(4).

[81] *Washoe Med. Ctr. v. Second Judicial Dist. Court of State of Nev. ex rel. Cty. of Washoe*, 148 P.3d 790, 794 (Nev. 2006) ("Because a complaint that does not comply with NRS 41A.071 is void ab initio, it does not legally exist and thus it cannot be amended.").

[82] ECF No. 6.

[83] *Williams v. Las Vegas Metro. Police Dep't*, No. 16-cv-3020, 2019 WL 346400, at *5 (D. Nev. Jan. 25, 2019) (citing Nev. Rev. Stat. § 280.280(4)).

[84] *Id.*

the violation at issue.[85]  To state a claim for municipal or county liability, a plaintiff must allege that he suffered a constitutional deprivation that was the product of a policy or custom of the local government unit.[86]  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."[87]  Municipalities are not vicariously liable under § 1983 for their employees' actions.[88]

A policy has been defined as "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."[89]  The weight of authority has established that a "policy can be one of action or inaction" within the meaning of *Monell*.[90]  "Both types of claims require that the plaintiff prove a constitutional violation."[91]  Martell's claims against the LVMPD fail because he has not shown that any of the alleged constitutional violations resulted from a policy or custom of the LVMPD.  So I dismiss his claims against the LVMPD without prejudice and with leave to amend.

## C.   Leave to amend

I have granted Martell leave to amend (1) the Fourteenth Amendment procedural-due-process claim, (2) the Fourteenth Amendment excessive-force claim, (3) the Fourteenth

---

[85] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)).

[86] *City of Canton*, 489 U.S. at 385.

[87] *See Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[88] *Id.* at 60.

[89] *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *Monell*, 436 U.S. at 690); *see also Waggy v. Spokane Cty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010).

[90] *Waggy*, 594 F.3d at 713 (citing *City of Canton*, 489 U.S. at 388).

[91] *Id.* (citing 42 U.S.C. § 1983).

Amendment conditions-of-confinement claim, and (4) the Fourteenth Amendment inadequate-medical-care claim.  Martell may also amend to allege true facts showing that the alleged constitutional violations resulted from a policy or custom of the LVMPD.  Martell is cautioned that these changes are the only ones permitted by this order, so he does not have leave to amend in any way that he sees fit.  I do not give Martell leave to assert new claims or to add other defendants to the claim I have allowed to proceed.  Martell is cautioned that the use of Doe defendants is not favored in the Ninth Circuit,[92] so he should attempt to determine an alleged bad actor's identity to properly name him or her as a defendant in this action.

If Martell chooses to file a second amended complaint, he is advised that a second amended complaint replaces the first amended complaint, so the second amended complaint must be complete in itself.[93]  He must file the second amended complaint on this court's approved prisoner-civil-rights form, and it must be entitled "Second Amended Complaint."  Martell must follow the instructions on the form.  He need not and should not allege very many facts in the "nature of the case" section of the form.  Rather, in each count, he should allege **facts sufficient to show what each defendant did to violate his civil rights.  He must file the second amended complaint by May 13, 2022**.  If Martell does not file a second amended complaint by that deadline, this action will proceed only on the First Amendment retaliation claim against Chandler.

---

[92] *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

[93] *See Hal Roach Studios, Inc.*, 896 F.2d at 1546 (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal).

**Conclusion**

IT IS THEREFORE ORDERED that the application to proceed *in forma pauperis* without having to prepay the filing fee **[ECF No. 5] is GRANTED**. Martell need not pay an initial installment fee, prepay fees or costs, or provide security for fees or costs, but he is still required to pay the full $350 filing fee under 28 U.S.C. § 1915, as amended. This full filing fee will remain due and owing even if this case is dismissed or otherwise unsuccessful.

To ensure that Martell pays the full filing fee, IT IS FURTHER ORDERED that:

- The Nevada Department of Corrections must forward from the account of **Leandre Martell, #1248296** to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits (in months that the account exceeds $10.00) until the full $350 filing fee has been paid for this action; and

- The Clerk is directed to **SEND:**
    - copies of this order to the Finance Division of the Clerk's Office <u>and</u> to the attention of **Chief of Inmate Services for the Nevada Department of Corrections**, P.O. Box 7011, Carson City, NV 89702; and
    - the approved form for filing a § 1983 prisoner complaint, instructions for the same, and a copy of his first amended complaint [ECF No. 6] to Martell.

IT IS FURTHER ORDERED that:

- The operative complaint is the first amended complaint [ECF No. 6].

- Martell's Fourteenth Amendment verbal harassment claim is DISMISSED with prejudice, as amendment would be futile;

- Martell's Fourteenth Amendment procedural-due-process claim is DISMISSED without prejudice and with leave to amend;

- Martell's Fourteenth Amendment excessive-force claim is DISMISSED without prejudice and with leave to amend;

- Martell's Fourteenth Amendment conditions-of-confinement claim is DISMISSED without prejudice and with leave to amend;

- Martell's Fourteenth Amendment inadequate-medical-care claim is DISMISSED without prejudice and with leave to amend;

- Martell's state-law medical-malpractice claim is DISMISSED without prejudice but without leave to amend;

- Martell's claims against defendant the Las Vegas Metropolitan Police Department are DISMISSED without prejudice and with leave to amend;

- Martell's First Amendment retaliation claim MAY PROCEED against defendant D. Chandler; and

. . .

. . .

- If Martell chooses to file a second amended complaint, he must use the approved form and he shall write the words "Second Amended" above the words "Civil Rights Complaint" in the caption. The second amended complaint will be screened in a separate screening order, and **the screening process will take <u>many months</u>**. **If Martell does not file a second amended complaint by May 13, 2022, this action will proceed only on the First Amendment retaliation claim against defendant D. Chandler.**

Dated: April 13, 2022

_____
U.S. District Judge Jennifer A. Dorsey